Todd Blanche
Acting Attorney General of the United States
Eastern District of Washington
Laurel J. Holland
Assistant United States Attorney
Post Office Box 21
Richland, WA 99352
Telephone: (509) 713-8450

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 2 9 2026

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:25-CR-20-TOR |
| Plaintiff, | |
| v. | Plea Agreement |
| RAYMOND S. SULAK, | |
| Defendant. | |

Plaintiff United States of America, by and through Laurel J. Holland, Assistant United States Attorney for the Eastern District of Washington, and Defendant Raymond S. Sulak ("Defendant"), both individually and by and through Defendant's counsel, Executive Director Federal Defender, Andrea K. George, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 1 of the Indictment filed on February 19, 2025, which charges Defendant with Attempted Online Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), a Class B felony.

Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

a. a term of imprisonment of not less than 10 years and up to a lifetime;

b. a term of supervised release of not less than 5 years and up to a lifetime;

c. an assessment of $5,000 absent indigency, pursuant to 18 U.S.C. § 3014(a) (the Justice for Victims of Trafficking Act);

d. a fine of up to $250,000;

e. sex offender registration;

f. restitution; and

g. a $100 special penalty assessment.

2. Resolution of Charges Pending in Washington State

As part of the resolution contemplated in this Plea Agreement, the Chelan County Prosecutor's Office agrees to dismiss the Information filed in Chelan County Superior Court Case Number 24-1-00282-04, which alleges violations of WASH. REV. CODE § 9A.44.073 and § 9A.28.020, Attempted Rape of a Child in the First Degree, and WASH. REV. CODE § 9A.44.076 and § 9A.28.020, Attempted Rape of a Child in the Second Degree. This dismissal is premised upon the completion of the following:

a. Defendant shall comply with all terms of this Plea Agreement;

b. Defendant shall plead guilty pursuant to the terms of this Plea Agreement;

c. The Court accepts Defendant's guilty plea and this Plea Agreement;

d. Defendant is sentenced in conformance with this Plea Agreement, to include: a term of imprisonment of no less than 10 years and a term of supervised release of no less than Defendant's life.

Should the above conditions not be met, the Chelan County Prosecutor's Office can reinstate any and all charges.

//

PLEA AGREEMENT - 2

3.    Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

4.    The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.    sentencing is a matter solely within the discretion of the Court;

b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

PLEA AGREEMENT - 3

d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.    Defendant understands that this Plea Agreement contains sentencing recommendations pursuant to Fed. R. Crim. P. 11(c)(1)(C). As a result, Defendant may withdraw from this Plea Agreement if the Court imposes a harsher sentence than agreed upon.

5.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

a.    pleading guilty in this case may have immigration consequences;

b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

6.    <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is

PLEA AGREEMENT - 4

knowingly and voluntarily waiving certain constitutional rights, including the following:

      a.    the right to a jury trial;

      b.    the right to see, hear and question the witnesses;

      c.    the right to remain silent at trial;

      d.    the right to testify at trial; and

      e.    the right to compel witnesses to testify.

Defendant expressly waives Defendant's right, even if otherwise authorized by the United States Constitution or federal law, to challenge in the district court, to move to withdraw Defendant's plea based on, or to appeal the validity and/or entry of, any and all charging instruments, any and all plea agreements, any and all pleadings, any and all communications between any and all defense counsel and any and all Assistant United States Attorneys, and/or any and all guilty pleas in the above-captioned matter based on any and all arguments that the United States, the United States Attorney's Office for the Eastern District of Washington, the Deputy Attorney General, any and all First Assistant United States Attorneys for the Eastern District of Washington, any and all Criminal Chiefs for the United States Attorney's Office for the Eastern District of Washington, any and all Assistant United States Attorneys for the Eastern District of Washington, and/or any and all attorneys for the government, are in any way unauthorized to bring, seek, file, and/or resolve any and all aspects of the above-captioned matter, case, and/or charges.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

PLEA AGREEMENT - 5

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7.    Elements of the Offense

The United States and Defendant agree that in order to convict Defendant of Attempted Online Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), the United States would have to prove the following beyond a reasonable doubt.

a.    *First*, between on or about July 25, 2024, and July 27, 2024, Defendant used a facility or means of interstate commerce, namely, the Internet, to persuade, induce, entice, or coerce an individual who had not attained the age of 18 years, who was present in the Eastern District of Washington, to engage in sexual activity;

b.    *Second*, Defendant believed the individual was under the age of 18;

c.    *Third*, that if the sexual activity had occurred, Defendant could have been charged with a criminal offense for that sexual activity, namely, Rape of a Child in the First Degree, in violation of WASH. REV. CODE § 9A.44.073, and Rape of a Child in the Second Degree, in violation of WASH. REV. CODE § 9A.44.076; and

d.    *Fourth*, Defendant did something that was a substantial step toward committing the crime.

8.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

PLEA AGREEMENT - 6

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

### *Introduction*

In late July of 2024, Washington State Patrol's Missing and Exploited Children's Task Force (MECTF), along with the Spokane Internet Crimes Against Children Task Force (Spokane- ICAC), Homeland Security Investigations (HSI), and local Chelan County law enforcement, conducted a multi-day undercover operation in Wenatchee, Washington, aimed at identifying individuals seeking to sexually exploit children online.

### *Communications with Undercover Officer*

From July 25, 2024, to July 27, 2024, Raymond S. Sulak, hereinafter Defendant, communicated via two internet facilitated communication applications with an undercover law enforcement agent (hereinafter "UC") posing as a mother of two girls, aged 9 and 12, living in the Eastern District of Washington. During the communications, the UC was present in Chelan County, Washington, in the Eastern District of Washington, while Defendant was located in and around his residence in Port Orchard, in the Western District of Washington. The initial communications between Defendant and the UC began on July 25, 2024, on a messaging website. Defendant sent the UC a private, direct message. The initial communications between Defendant and the UC are captured below:

| Defendant | Hello, 63 WA, very open minded and I enjoy invites. What sex and ages of all involved? |
|---|---|
| UC | 12 and 9 |
| Defendant | girls? |
| UC | yes…no one wants to play with my girls |
| Defendant | would love to be invited to play with you and them…why not? |
| UC | its rough out there |
| Defendant | Whereabouts in WA?.....You dress them sexy teasing, in public? |

PLEA AGREEMENT - 7

| UC | wenatchee...where are you? |
|---|---|
| Defendant | West of Seattle...a 3 hour ride....i ride a touring motorcycle...house? ...Still there? |
| UC | sorry...my girls are being needy |
| Defendant | Have they been shared? |
| UC | been shared? |
| Defendant | been with older men |
| UC | yes several |
| Defendant | not so innocent, yummy |
| UC | you interested in some fun play this weekend. they are lonely since there d a d d y left |
| Defendant | VERY interested |
| UC | care to chat somewhere else |
| Defendant | yes absolutely |

Thereafter, Defendant and the UC agreed to communicate via an encrypted internet-based messaging application. Defendant advised that he wished to have a video call via the application because they couldn't be "too careful." Defendant also messaged that "if this goes like we both WANT, it will be worth the drive." Defendant stated he was "very interested" because it had been "too long since I have been with girls their age." The UC asked for clarification, stating, "so you have experience?" Defendant responded, "some experience." Defendant questioned where the meeting would take place; the UC informed him she would host at her home. Defendant informed the UC that he would be sure to "take care of their needs" as "my needs are their needs."

Later that same day, Defendant and another UC, posing as the 12 and 9 year old girls' mother, engaged in a video call via the encrypted messaging application. During the conversation, Defendant shared that his wife was in a care facility due to health problems, and he did not need her to know about his interest in young girls, as that was his "outlet." Defendant claimed he had previously had "light anal sex" with an 8 year old family member.

PLEA AGREEMENT - 8

Defendant inquired what the rules were for having sex with the UC's minor daughters. The UC advised that Defendant would need to have recent lab work proving he was clean. Furthermore, he would need to bring the paperwork with him, otherwise he would need to wear a condom the entire time. Defendant expressed his interest in using his penis on the 9 year old's vagina and progressing to putting his penis between the lips of her vagina. The UC informed Defendant that the 12 year old had done everything, to include sex, but Defendant could not have anal sex with her because she did not like it. Defendant advised the UC that he was "thick" which could be difficult for younger girls. The UC and Defendant discussed Defendant being an ongoing "Daddy" to the UC's daughters.

After the video call, Defendant continued to communicate with the UC via message on the encrypted messaging application. The communications included Defendant inquiring after the type of STD test the UC required, Defendant's intention to obtain said testing, and his plan to travel to Wenatchee on Saturday, spend the night, then leave on Sunday morning. Defendant indicated he wanted both girls. The following messages are a sample of those exchanged during the chat:

| UC | whats your favorite age |
|---|---|
| Defendant | 9 Through preteens usually get interested in their bodies and sex (porn on web so widespread). I still remember how curious my 8 yr grandniece was. It all depends on the girl, but age group would be 8-12 |
| UC | perfect then. Works for everybody lol |
| Defendant | The curiosity for them is a New Daddy to play with them. Of course mine is tasting them as I do enjoy giving oral and fucking |
| UC | You want oral from which one |
| Defendant | sexy and hot to see little hands and mouths on a cock. I will go at their pace and not force them if they don't want to. You did state this is to be fun and enjoy my company |

PLEA AGREEMENT - 9

On July 26, 2024, at 8:50 a.m., the UC received a message from Sulak advising that he was at LabCorp completing his sexually transmitted disease testing. Defendant stated that if he was able to get his test results quickly, he would plan on coming to meet on Saturday (07/27/24). The UC responded, "one more thing- just want to be very clear again that you and I will not e sexual with each other. This is only about you and my girls." Defendant responded, "I do understand."

Defendant advised that he hoped his test would be completed by the next day because it had been a while since he had "tongued and tasted tight pussy". The UC reminded Defendant that he could always wear condoms if he couldn't get his test results in time. Defendant responded, "I know, just enjoy bareback more." Defendant advised that he would need to figure out what size of condoms to buy because it had been 35 years since he had worn one. Defendant inquired as to the UC's children's names. The UC provided names for both purported children. When the UC asked for Defendant's name, he advised that it was "Ray". Defendant then expressed his hesitation regarding meeting because he didn't want to be part of one of those "traps." The UC assured Defendant that she wasn't the law.

Defendant later inquired if he should bring anything else with him. The UC advised Defendant that he could bring some "lube" for one of the children. Defendant said he had "just the thing", coconut oil lube, because it was a natural lubricant that tasted good and "will be good for their skin." Defendant stated that it was good for "tight holes" as "patience is key." Defendant then wrote, "lubricant and fingers for both girls, lubricant on pussy lips, they can be on top and slide back and forth over the cock. They control, enjoy and have fun."

On July 27, 2024, at approximately 6:27 a.m., the UC received a message from Defendant. Defendant advised that he had received partial test results and thus far everything appeared normal. Defendant inquired how the UC would like to

PLEA AGREEMENT - 10

see his test results. The UC responded that he could take a picture and send it through the app. Defendant then sent a screenshot of his test results from LabCorp. The paperwork included the patient name, "Raymond Sulak", a date of birth of that was Defendant's true date of birth, and the phone number associated with Defendant. The document also indicated that he had completed the testing on July 26, 2024, at about 9:20 a.m. At approximately 11:38 a.m., Defendant sent a message to the UC indicating he was "leaving now." Defendant was provided a meeting address at a local middle school.

### Defendant's Arrival in Chelan County at Agreed Meet Location

At approximately 3:21 p.m., Defendant arrived at the school in Wenatchee, Washington, on his motorcycle. He parked and was placed under arrest. Officers located Defendant's phone, which illuminated when the UC made a call to the device, further confirming that Defendant was the individual on the other side of the chat communications.

Searches of Defendant's person and motorcycle yielded the following items: an iPhone, iPad, blue penis ring, STD testing results, coconut lubricant, "Night Man" (a male enhancement medication per the bottle), and two pies.

Defendant was interviewed at Washington State Patrol offices in Chelan after being advised of and waiving his *Miranda* rights. Defendant admitted to meeting the UC (using the mother's purported name) on a sex chat website. Defendant admitted that his username was "PNWPrv" and stated that "Prv" could be private or perv. Defendant admitted to the particulars of the chat with the UC, but initially claimed it was role play. Ultimately, Defendant admitted that he was attracted to children and that it was not right. He stated that he watched pornography involving teen boys with mothers, and pornography involving kids on a site called 'Motherless." When asked about his claims regarding sexually abusing his grandniece in the chats with the UC, Defendant claimed that nothing happened, but admitted that he was aroused by his grandniece's nudity at the time.

PLEA AGREEMENT - 11

Defendant was arrested and charged by state prosecutors in the Superior Court of Washington for Chelan County with Attempted Rape of a Child in the First Degree and Attempted Rape of a Child in the Second Degree in Case Number 24-1-00282-04.

### Forensic Examination of Defendant's iPad and iPhone

Defendant's iPad (S/N HFG464TG69) and iPhone (S/N G77WJP74G6) were forensically examined.   Investigators located the chat communications between Defendant and the UC on the devices.  Investigators also located child pornography image and video files on the devices.  One such image was described by the forensic examiner as an image of an adult male engaged in vaginal/penile intercourse with an eight (8) to ten (10) year old female in the back of a vehicle. These files were sent to the National Center for Missing and Exploited Children. Ultimately, 41 image files and seven (7) video files were identified as known minor series victims.

In summary, Defendant admits and stipulates that he used an encrypted messaging system that required the use of the Internet, a means and facility of interstate commerce, to persuade, induce, entice, or coerce a 9 year old child and a 12 year old child to engage in sexual intercourse.  Defendant admits that he believed the children were 9 and 12 years old, and that if he had engaged in sexual intercourse with said children, he could have been charged with a criminal offense for that sexual activity, namely, Rape of a Child in the First Degree, in violation of WASH. REV. CODE § 9A.44.073, and Rape of a Child in the Second Degree, in violation of WASH. REV. CODE § 9A.44.076.  Finally, Defendant stipulates and admits that he did something that was a substantial step toward committing the crime, including but not limited to, traveling from Port Orchard, Washington, to Wenatchee, Washington, with a blue penis ring, STD testing results, coconut lubricant, "Night Man", and an iPad and iPhone containing child pornography,

PLEA AGREEMENT - 12

with the intention of having sexual intercourse with children who were 9 and 12 years old at the time.

9.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss Count 2 of the Indictment filed on February 19, 2025, which charges Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

10.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant make no agreement as to the applicable Guidelines calculation.

a.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

PLEA AGREEMENT - 13

> iv.    provides complete and accurate information during the sentencing process; and
>
> v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

b.    Agreements Regarding Representations to the Court

The United States has a duty of candor to the tribunal.  If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

> i.    The United States and Defendant may each respond to any questions from the Court or United States Probation Office;
>
> ii.    The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

PLEA AGREEMENT - 14

iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v. The United States and Defendant may each respond to any arguments presented by the other;

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or

PLEA AGREEMENT - 15

departure, and/or any variance from the Guidelines range as calculated by the Court;

    viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

    ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

c.    No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

d.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

11.    Incarceration

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after

PLEA AGREEMENT - 16

Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree to recommend a term of imprisonment 120 months (10 years), to be followed by a lifetime of Supervised Release. The United States and Defendant agree to make those sentencing recommendations to the Court. Although the United States and Defendant agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of greater than 120 months (10 years) or indicates its intent to do so. Defendant also understands that the United States may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of less than 120 months (10 years) or a term of supervised release of less than a lifetime, or indicates its intent to do so.

The United States and Defendant acknowledge that the imposition of any fine, restitution, or conditions of Supervised Release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition

PLEA AGREEMENT - 17

of fines, restitution, or conditions of Supervised Release; and that the Court will exercise its discretion in this regard. The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, or conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

12.    Supervised Release

The United States and Defendant each agree to recommend a lifetime of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

      a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

      b.    Defendant shall report to the Probation Office any and all electronic communications service accounts, as defined in 18 U.S.C. § 2510(15) used for user communications, dissemination and/or storage of digital media files (i.e. audio, video, images).

PLEA AGREEMENT - 18

This includes, but is not limited to, email accounts, social media accounts, and cloud storage accounts. Defendant shall provide each account identifier and password, and shall report the creation of new accounts, changes in identifiers and/or passwords, transfer, suspension and/or deletion of any account within 5 days of such action. Failure to provide accurate account information may be grounds for revocation. The Probation Office is permitted to access and search any accounts using Defendant's credentials pursuant to this condition only when reasonable suspicion exists that Defendant has violated a condition of his supervision and that the accounts to be searched contain evidence of this violation.

c. Defendant shall not have any contact with any child under the age of 18 outside the immediate presence of an adult and approved in advance by the Probation Officer. Defendant shall not have any contact or communications of any kind with any child via telephone, the Internet, or any social media platform. Defendant shall immediately report to the Probation Officer any unauthorized contact with anyone under 18 years old.

d. Defendant shall not have any contact with any victim identified in the charging instrument or discovery in the above-captioned matter.

e. Defendant shall allow the Probation Officer or designee to conduct random inspections, including retrieval and copying of data from any computer, and any personal computing device that Defendant possesses or has access to, including any internal or external peripherals. This may require temporary removal of the equipment for a more thorough inspection. Defendant shall not

PLEA AGREEMENT - 19

possess or use any data encryption technique or program. Defendant shall purchase and use such hardware and software systems that monitor Defendant's computer usage, if so directed by the Probation Officer.

f.  Defendant shall not reside or loiter within 1000 feet of places where children under the age of 18 congregate, which includes primary and secondary schools, schoolyards, parks, playgrounds, shopping malls, daycare centers, carnivals, recreation centers, and arcades.

g.  Defendant shall not possess or manufacture any sexually stimulating, sexually explicit or sexually oriented material including videos, magazines, photographs, computer generated depictions, or any other matter that depicts "sexually explicit conduct" involving children or adults, as defined by 18 U.S.C. § 2256(2).  Defendant shall not enter or be present at any establishment involved in the sex industry, including adult book stores, massage parlors, escort services, or strip clubs. Defendant shall not use any sex-related adult telephone number, Internet access, or social media platform.  Defendant shall provide to the Probation Officer all of Defendant's telephone and Internet records to monitor compliance, at the direction of the Probation Officer.

h.  Defendant shall register as a sex offender, according to the laws of each state in which Defendant resides, is employed, or is attending school.  Defendant shall provide verification of compliance with this requirement to the Probation Officer.

PLEA AGREEMENT - 20

i.  Defendant shall complete a sex offender evaluation, which may include periodic polygraph testing and completion of the ABEL assessment, at the direction of the Probation Officer.

j.  Defendant shall participate and successfully complete an approved state-certified sex offender treatment program, including compliance with all lifestyle restrictions and treatment requirements of the program.  Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider.  Defendant shall contribute to the cost of treatment according to Defendant's ability

13.  Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine.  Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14.  Judicial Forfeiture

Defendant agrees to voluntarily forfeit and relinquish to the United States all right, title and interest in all assets listed herein, and hereby agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture of assets, including, but not limited to the following:

- iPhone (IMEI 351698471310413, SN G77WJP74G6)
- iPad (IMEI 35 955254 925854 6, SN HFG464TG69)

Defendant stipulates that Defendant is the sole owner of the assets listed above and that no one else has an interest in these assets.

Defendant acknowledges that the assets listed above, which Defendant is agreeing to forfeit, are subject to forfeiture as property used or intended to be used

PLEA AGREEMENT - 21

in any manner or part to commit or to facilitate the commission of the offense to which Defendant is pleading guilty.

Defendant agrees to take all steps requested by the United States to pass clear title to these assets to the United States, and to testify truthfully in any forfeiture proceeding.

Defendant agrees to hold harmless all law enforcement agents/officers, and the United States, its agents, and its employees from any claims whatsoever arising in connection with the seizure and/or forfeiture of the assets listed above.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets that Defendant is agreeing to forfeit in this Plea Agreement. Defendant waives all constitutional, equitable and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives Defendant's right to a jury trial on the forfeiture of these assets. Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to forfeiture.

15. Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

16. Restitution

The United States and Defendant agree that restitution is required. 18 U.S.C. §§ 2259, 3663, 3663A, 3664. Defendant acknowledges that restitution is mandatory, without regard to Defendant's economic situation, to identifiable victims who suffer ongoing injury by virtue of child pornography images depicting them circulating on the Internet indefinitely, in amounts that comport with Defendant's relative role in the causal process that underlies the general

PLEA AGREEMENT - 22

losses of the victims. *Paroline v. United States*, 572 U.S. 464 (2014); 18 U.S.C. § 2259.

Pursuant to 18 U.S.C. § 3663(a)(3), in exchange for the United States dismissing counts and/or agreeing not to bring additional charges, Defendant voluntarily agrees to pay restitution to all victims of child pornography that Defendant distributed, received, and/or possessed, as set forth in the discovery in this case, whether or not Defendant pleads guilty to counts charging that specific conduct, and whether or not such counts are foregone pursuant to this Plea Agreement.

Defendant understands that for purposes of 18 U.S.C. § 2259, "victim" means the individual harmed as a result of a commission of the crime, including, in the case of a victim who is under 18 years of age, the legal guardian of the victim. The United States and Defendant also hereby stipulate and agree that the Court shall order full restitution, as appropriate, to any entity, organization, insurance company, individual, and/or medical provider who provided medical services and/or funds related to the treatment of any victim.

For any victim against whom Defendant's conduct occurred on or after December 7, 2018, Defendant agrees that such victims shall be entitled to restitution as if the AVAA applied to Defendant's conduct and agrees that the Court should order restitution in an amount that reflects Defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000 per victim.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's individual conduct, in exchange for the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement.

PLEA AGREEMENT - 23

With respect to restitution, the United States and Defendant agree to the following:

        a.    Restitution Amount and Interest

The United States and Defendant stipulate and agree that the Court should order restitution, and that interest on this restitution amount, if any, should be waived.

        b.    Payments

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

        c.    Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies.

If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over

PLEA AGREEMENT - 24

which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

      d.    Obligations, Authorizations, and Notifications

Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to both the United States Attorney's Office and the United States Probation Office.  Defendant acknowledges and understands that Defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1.

Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement.  Until Defendant's fine and restitution orders are paid in full, Defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations.  Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the court and the United States Attorney's Office within a reasonable period of time, but no later than within 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay

PLEA AGREEMENT - 25

restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until Defendant's fine and restitution orders are paid in full, Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(F), Defendant understands and agrees that until Defendant's fine and restitution orders are paid in full, Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

17.    Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

18.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

19.    JVTA Special Assessments

Defendant understands that Defendant will be required to pay a mandatory special assessment of $5,000 pursuant to the Justice for Victims of Trafficking Act ("JVTA") of 2015, absent a judicial finding of indigence.

20.    Sex Offender Registration

Defendant understands that by pleading guilty, Defendant will be required to register as a sex offender upon release from prison as a condition of supervised release, pursuant to 18 U.S.C. § 3583(d).

PLEA AGREEMENT - 26

Defendant also understands that independent of Defendant's term of supervised release, Defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout Defendant's lifetime.

Defendant agrees that during the duration of Defendant's registration requirement, Defendant will keep Defendant's registration current with the state sex offender registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours.

Defendant agrees that during the duration of Defendant's registration requirement, Defendant will notify and verify with the state sex offender registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours, of changes to Defendant's name, place of residence, place of employment, education, or religious worship, and any other information required by such agency or agencies.

Defendant understands that Defendant will be subject to possible federal and state penalties for failure to comply with any such requirements. Defendant understands that under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon Defendant's release from confinement.

As a condition of Supervised Release, Defendant shall initially register with the state sex offender registration of the state of Defendant's release, and shall also register with the state sex offender agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer.

Defendant shall provide proof of registration to the Probation Officer within 72 hours of release.

21.    Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

PLEA AGREEMENT - 27

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any and all aspects of Defendant's conviction and/or the sentence the Court imposes, on any and all grounds, so long as the Court imposes a term of incarceration consistent with this Rule 11(c)(1)(C) Plea Agreement.  Defendant further expressly agrees that if the Court indicates its intent to impose a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, Defendant has fourteen (14) days from the sentencing hearing to file with the Court a notice of withdrawal from the Rule 11(c)(1)(C) Plea Agreement.  Defendant expressly waives Defendant's right to withdraw from the Rule 11(c)(1)(C) Plea Agreement more than fourteen (14) days after the Court either imposes a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, or indicates its intent to do so.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

22.  Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

PLEA AGREEMENT - 28

a. Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

b. The United States may prosecute Defendant on all available charges;

c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d. The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

23. Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

PLEA AGREEMENT - 29

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Todd Blanche
Acting Attorney General

_____ /for/                    4-29-26
Laurel J. Holland                          Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____                          4-29-26
Raymond S. Sulak                           Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's

PLEA AGREEMENT - 30

decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.

Andrea K. George
Attorney for Defendant

4-29-26
Date

PLEA AGREEMENT - 31